IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. GLR-11-0310 |
| YVONNE CASTLE TAYLOR | * | |

...oOo...

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTIONS TO SUPPRESS

The United States of America, by and through undersigned counsel, hereby opposes and responds to a pre-trial motion filed by the defendant, Yvonne Castle Taylor. On June 1, 2012, the defendant filed a motion seeking an order suppressing the defendant's statements and all evidence obtained from her arrest. (Docket no. 33). Because the defendant's statements were voluntary, and because law enforcement officers had probable cause to arrest her, the motion should be denied.

I. FACTS

On May 28, 2011, Yvonne Castle Taylor ("Taylor") flew from Baltimore Washington International Airport (BWI) on Air Tran flight 465 to Atlanta, Georgia. At the Atlanta airport, she transferred to Air Tran flight 1056 bound for Montego Bay, Jamaica. On the jet way, Customs and Border Protection ("CBP") Officers Shahbaaz and Horton spoke with Taylor. Officer Shahbaaz asked Taylor if she had any currency to declare and she responded that she only had $3,000 in U.S. currency. Taylor then retracted her statement and said she had $2,000. Subsequently, Taylor indicated that she was not sure how much currency she had in her possession and indicated that she did not count the money she was given. Officer Shahbaaz asked Taylor that if she were patted down by officers, would they find additional currency and she

answered affirmatively. Taylor eventually admitted that she was carrying approximately $100,000 on her. CBP Officers subsequently patted her down and a girdle containing $100,100 in U.S. currency was found around her mid-section.

Homeland Security Investigations Special Agent Rutherford ("SA Rutherford") then escorted Taylor with CBP Officer Swords to a conference room. During a taped conversation, SA Rutherford advised Taylor of her Miranda rights. She stated that she did not wish to waive her rights. SA Rutherford ended the interview and turned off the digital recorder. However, while being processed, Taylor she indicated that she had done this trip twice before and that the currency was going into a bank.

## II. ARGUMENT

**A.    The Defendant's Statements Made Prior to Her Arrest are Admissible**

The Fifth Amendment privilege against self-incrimination provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amendment V. In *Miranda v. Arizona,* 348 U.S. 436 (1966), the Supreme Court established a prophylactic, procedural mechanism that safeguards a defendant's Fifth Amendment privilege when that defendant is subject to custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436 (1966); *Dickerson v. United States,* 530 U.S. 428 (2000). Custody for *Miranda* purposes is whether under the totality of circumstances, a "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). *Miranda* is not applicable in cases where the defendant is not in "custody" when he or she is being questioned. *See Illinois v. Perkins,* 496 U.S. 292, 297 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation.").

Any statements made by the defendant prior to her leaving the jet way with the CBP Officers were made prior to the defendant being placed into custody, and therefore were not in violation of the defendant's Fifth Amendment rights.  The CBP Officers will testify that they used a conversational tone of voice, that no one brandished weapons, and they did not inhibit her egress from the jet way.  Because CBP Officers did not curtail her freedom when they spoke with her, she was not in custody and thus there are no grounds to suppress any statements made prior to her being placed into custody.

B. **The Defendant's Statements During Booking Were Spontaneous and Should not be Suppressed**

The government reads defendant's motion as also seeking to suppress statements made to SA Rutherford during the booking process.  Miranda is not implicated in cases in which the defendant is not "interrogated" or questioned by officers.  *Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980) (defining "interrogation" as "express questioning or its functional equivalent").

In this case, SA Rutherford was processing the defendant after advising the defendant of her *Miranda* rights.  During the booking process, the defendant admitted to SA Rutherford that she had done this before. Taylor's statement was not prompted by any questions from any law enforcement officers.  The officers did not ask her where the money came from or ask her to otherwise explain why she had a large amount of currency in her girdle. The defendant's comment was a voluntary and spontaneous statement that was not made in response to interrogation.  It is well-settled that where, as here, a defendant makes statements while in custody that are not in response to interrogation, *Miranda* is not implicated.

**C.     Defendant's Statements were Voluntarily Given**

The defendant's statements were made voluntarily within the meaning of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is admissible. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000) (admissibility of a defendant's statement turns on whether it was made voluntarily, as required by the Fifth Amendment). Prior to defendant's statement, no law enforcement agent indicated that the defendant's statements would in any way be immunized. By the same token, law enforcement agents did not engage in any violence or threats in order to persuade defendant to make any statements. *See United States v. Braxton*, 112 F.3d 777, 784 (4th Cir. 1997). Moreover, the officers did not deprive defendant of clothing, food or sleep; subject her to lengthy interrogation; or try to deceive her. Thus, the law enforcement officers did not engage in any coercive activity against the defendant. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate" to any finding that a confession was not "voluntary" within the meaning of the Due Process Clause).

Therefore, under the totality of the circumstances, the will of the defendant making the statement was not "overborne" and her "capacity for self-determination" was not "critically impaired." *See Gray*, 137 F.3d at 771 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)); *see also Mincey v. Arizona*, 437 U.S. 385, 399 (1978); *Haynes v. Washington*, 373 U.S. 503, 513 (1963). Accordingly, the defendant's statements on the jet way and during the booking process were made voluntarily and should not be suppressed.

**D.     Defendant's Warrantless Arrest was Based on Probable Cause**

The defendant has also moved to suppress tangible and derivative evidence stemming from her arrest. The government reads defendant's motion as contending that the search of her person was

an illegal search, her arrest was unlawful, and thus the evidence is inadmissible.  To the contrary, the search of her body was legally justified, probable cause existed for her arrest, and there was no violation of defendant's Fourth Amendment rights.

It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual without a warrant if the officer had probable cause to believe that the individual has committed, is committing, or is about to commit a crime.  *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004)(citations omitted).  "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id*. (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Whether there is probable cause to arrest depends on the totality of the circumstances. *Dickey-Bey*, 393 F.3d at 453 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).  The Fourth Circuit has explained the probable cause standard as "facts and circumstances with the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense," giving deference to the expertise and experience of law enforcement officers at the scene. *Dickey-Bey*, 393 F.3d at 453 (citations omitted).

In the present case, CBP Officers had probable cause to arrest the defendant after the discovery of $100,100 in currency secreted inside her girdle.  The defendant had already provided a boarding pass to the gate agent and walked down the jet way where the two CBP Officers waited for her.  During the conversation with them, she admitted to having more than $10,000 in currency on her person.  The officers had probable cause to search her based on the statements she made to

5

them. In addition, the CBP Officers were allowed to search the defendant while she was exiting the country at a border point. *See United States v. Oriakhi*, 57 F.3d 1290, 1297 (4th Cir. 1995). Therefore, defendant's placement into custody and her subsequent arrest were lawful and valid and the evidence obtained from her arrest is admissible.

### III. CONCLUSION

For all of the foregoing reasons, and for the reasons to be presented at an evidentiary hearing on this matter, the Defendant's Motion to Suppress should be denied.

        Respectfully submitted,

        Rod J. Rosenstein
        United States Attorney

Date: June 25, 2012        By: /s/
        Constantine Lizas
        Special Assistant United States Attorney
        36 S. Charles Street, Fourth Floor
        Baltimore, Maryland 21201
        (410) 209-4889

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of June, 2012, a copy of the foregoing Government's Response to Defendant's Motion to Suppress Tangible and Derivative Evidence was served via ECF to Lance Hamm.

        /s/
        Constantine Lizas
        Assistant United States Attorney