**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. GLR-11-310** |
| **YVONNE CASTLE TAYLOR** | : | |

**UNITED STATES' RESPONSE TO**
**DEFENDANT'S MOTIONS IN LIMINE**

The United States of America, by its undersigned counsel, respectfully submits this response to the Defendant's Motions in Limine.  The Defendant has moved to exclude two pieces of evidence: (a) the Defendant's statements after her arrest that she had "done this trip twice before" and that she couldn't "go to jail" and (b) a record from a database maintained by United States Customs and Border Patrol ("CBP") reflecting that the Defendant had $27,260 seized from her on September 26, 1997 for failing to report the transportation of that currency out of the country.  Although the Defendant argues that her statements could have innocent explanations, those arguments go to weight and not admissibility.  Furthermore, both pieces of evidence are admissible under Fed. R. Evid. 404(b) to show the Defendant's knowledge of the requirement that an individual must file a report when transporting more than $10,000 out of the country.  Finally, the CBP record is admissible as a business record under Fed. R. Evid. 803(6) and as a public record under Fed. R. Evid. 803(8) and does not violate the Confrontation Clause because it includes non-testimonial, mechanically-entered factual information used by the government to track assets in its possession.

**I.     BACKGROUND**

The Defendant is charged with one count of bulk cash smuggling under 31 U.S.C. § 5332.  An element of that offense is that the Defendant acted with an intent to evade the

requirement that an individual must file a report when transporting over $10,000 in currency out of the country.

The facts of the case are as follows.  Homeland Security Investigation ("HSI") agents received a tip that the Defendant would be transporting a large amount of currency from Baltimore Washington International Airport ("BWI") to Montego Bay, Jamaica, with a stopover at Atlanta Hartsfield International airport.  HSI determined that the Defendant was making such a trip on May 28, 2011, and that day at BWI, Transportation Security Administration ("TSA") officials searched the Defendant but did not detect the presence of any currency or other contraband on her person.

HSI Special Agent Mary Horn in Baltimore communicated the results of TSA's search to HSI Special Agent Roy Rutherford in Atlanta.  Rutherford informed CBP officers at the Altanta Airport of the results of the TSA search and called off HSI's request for an inspection.  CBP nevertheless exercised its independent authority to conduct a search of the Defendant before she boarded the plane to Jamaica.  Accordingly, CBP officers Abdullah Shahbaaz and Christopher Horton, having only the Defendant's name, began to question passengers as they boarded the Defendant's flight to Jamaica, asking each for their passport and asking each how much currency they were carrying.  During this process Officer Shahbaaz stopped Ms. Taylor, identified her by her passport, and questioned her.

During this questioning, the Defendant first acted suspicious – looking away and appearing nervous.  She then told Officer Shahbaaz that she was carrying $3,000.  Given her nervousness and suspicious behavior, Shahbaaz continued to question her.  The Defendant then stated that she was carrying $2,000.  Given these contradictory statements, Shahbaaz pressed

further, at which point the Defendant said that she was unsure how much money she was

carrying.  Finally, she changed her story again, stating that she had over $100,000 concealed

around her mid-section, but that "they didn't tell me how much money it was."

The Defendant was then taken to a "secondary area" at the airport where CBP conducts

searches and interviews.  A search of the Defendant revealed over $100,000 hidden in her girdle.

 HSI Special Agent Roy Rutherford was informed, and he arrived at the airport shortly thereafter

to interview the Defendant.  During Rutherford's initial interview, the Defendant invoked her

right to remain silent.   Later, however, while Special Agent Rutherford was collecting

information from her for the booking process, she made a spontaneous statements to Rutherford

that she had "done this trip twice before" and that she "couldn't go to jail."

The Defendant's statements reference her past trips to Jamaica, during which she had

currency in an amount over $10,000 seized from her for failing to report it.  The government has

further evidence of one of those occasions in the form of a report from CBP's database, which

reflects that on September 26, 1997, the Defendant had $27,260 in cash seized from her because

she failed to report it.  That record is attached hereto as Exhibit 1.[1]

## II.   ARGUMENT

### A.   The Defendant's Arguments Regarding the Meaning of her Post-Arrest Statements go to Weight and are not a Basis to Exclude That Evidence

The Defendant argues that her post arrest statements – that she had "done this trip twice

before" and "I can't go to jail" should be excluded under Fed. R. Evid. 401 and 403 because they

are "vague."   These arguments. appropriate in closing argument, go to weight and are not a basis

---

[1]Exhibit 1 is not a certified copy of the record.  The government is in the process of
obtaining such a copy from CBP.

to exclude the evidence.

The Defendant first argues that the ambiguity of the term "this" in the Defendant's statement renders it completely irrelevant under Fed. R. Evid. 401.  While it may be indirect, however, the strongest inference from the statement is that the Defendant had been caught carrying a large amount of currency out of the country before, and was worried that this time she would be subject to prosecution.  This is corroborated by the government's evidence from CBP's database, discussed more fully below, of one such prior occasion on which the Defendant had currency seized from her.  *See* Ex. 1.

The Defendant next argues that the statements should be excluded under Fed. R. Evid. 403 because they could have some innocent explanation and thus the introduction of the statements would confuse the issues and mislead the jury.  Again, given the corroborating evidence of the prior seizure of currency from the Defendant, the strongest inference is that the Defendant was referring to the fact that she had been caught smuggling currency before.  Regardless, any arguments as to other explanations of the statements go to weight, not admissibility, as stated above.  *See United States v. Hairston*, 1991 WL 216451 at *3-4 (4th Cir. 1991) (ambiguity of statement does not render it overly prejudicial if a reasonable inference tends to prove the offense).

**B.**     **The Defendant's Statements and the Record of the Seizure are Admissible Evidence under Fed. R. Civ. P. 404(b)**

Both the Defendant's statements and the record showing the prior seizure of the currency from the Defendant in 1997 are admissible to show her knowledge of the reporting requirement, her lack of mistake in failing to file the report, and her intent to evade the reporting requirement. Fed. R. Evid. 404(b) permits evidence of crimes, wrongs, or other acts to prove motive,

4

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Defendant's motion makes the conclusory assertion that none of the exceptions apply, but this evidence clearly shows that the Defendant had encountered the reporting requirement before, and thus knew it and intended to avoid it on May 28, 2011.

In a similar case from the Seventh Circuit involving a charge of failing to report the transportation of currency in an amount greater than $10,000 out the country under 31 U.S.C. § 5316, the Seventh Circuit upheld a district court's admission of evidence that the defendant in that case had filled out reports containing the currency reporting requirements on prior trips under Fed. R. Evid. 404(b). *See United States v. Obiuwevbi,* 962 F.2d 1236, 1240 (7th Cir. 1992). Like the prior filing of reports in *Obiuwevbi,* the 1997 seizure shows how the Defendant learned of the reporting requirement and that she acted with an intent to avoid it on May 28, 2011.

The Defendant further argues that the evidence regarding the 1997 seizure is too remote in time to have any probative value. With respect to a significant event such as having over $25,000 taken from you by the government, however, 14 years is not a substantial amount of time. It would be hard to believe an individual could forget such an event, or why the money was taken, no matter how long ago it occurred. Regardless, such an argument would again go to weight, and not the admissibility of the evidence.

Finally, neither piece of evidence will be used to show that the Defendant acted in accordance with a propensity to carry large amounts of currency out of the country. *See* Fed. R. Evid. 404(a) (character evidence not admissible to show person acted in accordance with that trait or character). Given that the Court denied the Defendant's motion to suppress the physical

evidence seized upon her arrest, the government doubts that the Defendant will dispute at trial

that she was in fact carrying over $100,000 on her person on May 28, 2011 or that she failed to

file the required report.  The only element left is intent to avoid the reporting requirement, and

evidence of prior acts are permitted to prove such an element under Fed. R. Evid. 404(b).

Regardless, any slightly impermissible effect of the evidence does not substantially outweigh its

probative value to show knowledge, intent, and lack of mistake.  *See* Fed. R. Evid. 403.

C.     **The Record of the Defendant's 1997 Seizure is Admissible as a Business
Record Under Fed. R. Evid. 803(6) and as a Public Record Under Fed. R.
Evid. 803(8)**

The government intends to offer a record from CBP's Seized Assets and Case Tracking

System ("SEACATS") reflecting that $27,260 was seized from the Defendant on a prior

occasion as a business record under Fed. R. Evid. 803(6), and as a public record under Fed. R.

Evid. 803(8).  The database entry contains basic information about the amount of currency

seized from the Defendant, the date it was seized, information on whom it was seized from, and

under what statutory authority the seizure was executed.[2]  Ex. 1.  The database also contains a

narrative summary of the stop that led to the seizure, but the government does <u>not</u> intend to

introduce that portion of the record.[3]

The Supreme Court has held that the introduction of "testimonial" hearsay statements

violate the Confrontation Clause.  *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  The Fourth

Circuit has concluded that the "core class" of testimonial statements includes statements that a

---

[2]The government has been unable to locate the individuals who initially entered the data
into the SEACATS database.

[3]This portion of the record has not been included in Exhibit 1.

reasonable person in the declarant's position would have expected to be used at trial. *United States v. Cabrera-Beltran* 660 F.3d 742, 752 (4th Cir 2011). The portion of the SEACATS report that the government intends to produce falls outside of this definition.

Although no court appears to have discussed the admissibility of SEACATS reports specifically, the Fourth Circuit and other courts have addressed the admissibility of records regarding a Defendant's travel contained in a CBP database called the "Treasury Enforcement Communication System" ("TECS"). In *United States v. Cabrera-Beltran*, the Fourth Circuit found that TECS records were admissible as public records that did not violate the Confrontation Clause. 660 F.3d at 750-51. That case involved the prosecution for a conspiracy to import cocaine into the United States. *Id.* at 746. At trial, the government introduced records from the TECS system showing that the Defendant crossed the border on certain dates and in certain vehicles. *Id.* at 750. On appeal, the Fourth Circuit rejected the Defendant's hearsay and Confrontation Clause objections. *Id.* at 754 (citing cases in the Fifth and Ninth Circuits that held that TECS records are admissible). The Court concluded that the TECS records were entered "for the mere purpose of maintaining a record of what [was] coming into the United States" and were the result of "mechanically register[ing] [an] unambiguous factual matter." *Id.* at 752. Accordingly, the records were public records and did not violate *Crawford,* the Court concluded. *Id* at 753.

The portions of the SEACATS record the government intends to introduce are no different than the records in *Cabrera-Beltran* regarding the dates the defendant in that case entered the country and the make of the vehicles he drove. The record here contains unambiguous factual information – the amount of money seized from the Defendant, the date it

7

occurred, and the statutory authority for the seizure.  Ex. 1.  Whether the narrative summary portion of the record describing the circumstances surrounding the seizure implicates the Confrontation Clause is a closer question, but, as stated above, the government does not intend to introduce that portion.  The portion containing the bare facts about what was seized is used by CBP to keep track of what assets they have in their possession and how much they have forfeited – a non-testimonial purpose.  *See* Notice, 73 Fed. Reg. 77764-10 at 77767 (Dec. 19, 2008) (SEACATS purpose is to "collect and maintain records on . . . forfeitures").

The portion of the SEACATS record is thus reliable for the same reasons as any other business or public record – those who created that part of the record have a business and operational incentive to be accurate and not embellish.  The government personnel inputting the information on seizures want to make sure that they accurately document how much money is in the government's possession and from whom it was taken, lest the government lose track of that property or think that they have more money than they actually do.  This is not like a police report, where an officer has an incentive to embellish his narrative of an arrest or investigation to bolster his chances of securing a conviction.  *See Cabrera-Beltran*, 660 F.3d at 752 ("the Custom Services officials . . . have no motivation other than to mechanically register this unambiguous factual matter.").  Accordingly, the portions of the SEACATS records the government seeks to introduce have all the indicia of reliability of a classic business or public record, and are non-testimonial.

**III.**   <u>**CONCLUSION**</u>

For all the reasons herein, the court should deny the Defendant's Motions in Limine.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:_____/ss/_____

P. Michael Cunningham
Evan T. Shea
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Government's Response to the Defendant's Motions in Limine was filed using CM/ECF on February 7, 2013 and served on all parties of record via that system.

_____/s/_____
Evan T. Shea
Assistant United States Attorney